A08A0860. AYER v. NORFOLK TIMBER INVESTMENT, LLC.
(662 SE2d 221)

BLACKBURN, Presiding Judge.

In a dispute over an alleged contract for the purchase and sale of real estate, Charles Ayer (seller) appeals from the grant of an interlocutory injunction to Norfolk Timber Investment, LLC (buyer). Specifically, Ayer contends that the trial court erred as a matter of law in enjoining him from selling the property to a third

party, because (1) the parties never entered into an enforceable contract, (2) the trial court relied on inadmissible evidence, and (3) Norfolk had not met the contract's conditions precedent to Ayer's obligation to perform. For the reasons that follow, we affirm.

"A trial court may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative conveniences of the parties, it determines that they favor the party seeking the injunction." *Hampton Island Founders v. Liberty Capital*.[1] That is because an interlocutory injunction "is a device to keep the parties in order, and prevent one from hurting the other whilst their respective rights are under adjudication." *Kirtland v. Mayor & Council of Macon*.[2] "There must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy." (Punctuation omitted.) *Hampton Island Founders v. Liberty Capital*, supra.

> The trial court has broad discretion to decide whether to grant or deny a request for an interlocutory injunction, and the appellate courts will not disturb the trial court's exercise of its discretion unless a manifest abuse of discretion is shown or there was no evidence on which to base the ruling.

(Citations omitted.) *Chambers v. Peach County*.[3]

The undisputed evidence shows that, in the process of assembling land to construct a cement plant, Norfolk sought to purchase from Ayer a 6.46 acre tract of land that would provide access between the proposed cement plant and a railway. Norfolk prepared a contract and provided it to Ayer, who, after striking through one paragraph, signed it on March 20, 2007. There is evidence that Norfolk's representative then initialed the change and signed the contract. The contract provided that the closing would be held on or before June 1, 2007; however, the closing was delayed, allegedly due to a problem obtaining a survey. Ayer and Norfolk continued to work toward closing the transaction, and, on July 30, 2007, Norfolk executed the closing documents, and Ayer allegedly told Norfolk that he would execute them the next day. Ayer did not execute the closing documents, and Norfolk, in September 2007, obtained a temporary restraining order enjoining Ayer from selling or otherwise encumbering the land, and sued Ayer for specific performance, seeking an interlocutory injunction prohibiting any sale to another party. Fol-

---

[1] *Hampton Island Founders v. Liberty Capital*, 283 Ga. 289, 293 (1) (b) (658 SE2d 619) (2008).

[2] *Kirtland v. Mayor & Council of Macon*, 62 Ga. 747, 750 (1879).

[3] *Chambers v. Peach County*, 268 Ga. 672, 673 (1) (492 SE2d 191) (1997).

lowing an evidentiary hearing, the trial court granted the interlocutory injunction pending discovery and trial on Norfolk's specific performance claim. Ayer now directly appeals. See OCGA § 5-6-34 (a) (4).

1. Ayer contends that the trial court erred as a matter of law in granting the injunction, because the parties allegedly never entered into an enforceable contract. At the outset we note that the law regards real property "as sufficiently unique that equity will enforce a contract for its sale or lease," *Black v. American Vending Co.*,[4] and that "[t]he purpose of the grant of the interlocutory injunction was solely to maintain the status quo pending a final determination of the suit, so as to prevent any threatened wrongful act or refusal to act of any party." *Harris v. Hine*.[5] Here, it is undisputed that the real property's unique character is based in part on the presence of resources sufficient to support cement production. Were Ayer to sell the property to a third party, Norfolk would be without an adequate remedy should it prevail in its suit against Ayer.

Nevertheless, Ayer asserts that the trial court erred in granting the interlocutory injunction, because he and Norfolk never entered into an enforceable contract. There were two exhibits admitted below that purport to be the contract; both are identical, except that one is signed by Ayer, and the other is signed by both Ayer and Norfolk. Here, Ayer relies on the version of the alleged contract that was attached to Norfolk's verified complaint (and which was authenticated by Norfolk at the evidentiary hearing) and argues that because that copy had not been signed by Norfolk, it does not show mutual assent by both parties. As Ayer had struck through a paragraph, he asserts that his signature of the alleged contract merely constituted a counter-offer, which was never accepted by Norfolk.

However, Ayer ignores the second exhibit admitted by the trial court, which was also a copy of the contract, signed by Norfolk, and with the struck-through paragraph initialed by Norfolk. Norfolk's closing attorney testified that he believed that Norfolk signed it after Ayer, on the same or following day. In light of this evidence that the parties mutually assented to the terms of the purchase and sale agreement, we discern no abuse of the trial court's discretion in granting the injunction. See *Beckworth v. Beckworth*[6] ("[i]t is not necessary that the writing by which the contract is to be evidenced be executed simultaneously with the making of the contract; and any

[4] *Black v. American Vending Co.*, 239 Ga. 632, 634 (2) (238 SE2d 420) (1977).
[5] *Harris v. Hine*, 232 Ga. 183, 187 (2) (205 SE2d 847) (1974).
[6] *Beckworth v. Beckworth*, 255 Ga. 241, 245 (3) (a) (336 SE2d 782) (1985).

writing, contemporaneous or subsequent, in which the party charged admits, over his signature, all of the terms of the contract insisted upon by the opposite party, is sufficient").

2. Ayer also challenges the trial court's admission of the mutually signed copy of the contract, on the ground that Norfolk already swore that the copy without its signature was the "true and correct" copy. To initiate the action, Norfolk attached to its verified complaint a copy of the contract only showing Ayer's signature. The complaint averred that the copy was the "true and correct copy" of the contract signed by Ayer. Later, at the hearing, Norfolk's representative testified that the copy unsigned by Norfolk was a true and correct copy of the contract. That copy was admitted as Exhibit J.

Also at the hearing, over Ayer's objection, Norfolk sought to admit another copy of the contract, identical in every way except that it was also signed by Norfolk. Norfolk's representative authenticated that copy as well, and the trial court admitted the mutually signed copy as Exhibit O, reserving a ruling on Ayer's objection.

Relying on *Prophecy Corp. v. Charles Rossignol, Inc.*,[7] Ayer now argues that the trial court erred in admitting the mutually signed copy despite Norfolk's initial averment that the copy with only Ayer's signature was true and correct. Pretermitting the issue of whether Ayer is bound by his own signature alone, we note that the testimony by Norfolk's representative and the statements in the verified complaint are essentially evidence that each exhibit is a true and correct copy of the original contract as signed by Ayer. This does not conflict with the other evidence that Norfolk later signed the same contract. Therefore, the two exhibits at issue are not contradictory, and the *Prophecy* rule is not implicated here.

Nevertheless, we note that the general rule articulated in *Prophecy* does not operate "even where testimony is contradictory, if a reasonable explanation is offered for the contradiction. . . ." Id. at 30 (2). Here, the closing attorney testified that he mixed up the signed copies in his file, that he only later found the mutually signed copy, and that each was a correct copy. In light of the record before us, we discern no error in the trial court's consideration of the mutually signed copy of the contract. See id. at 31 (3) (finding a contradiction in testimony reasonable based on refreshed memory after a file review).

3. Ayer also contends that the trial court erred in granting the injunction because, even if the contract was enforceable, Norfolk failed to perform several conditions precedent to his obligation to perform. The contract provided, in relevant part:

---

[7] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986).

> The Seller's obligation to convey the subject Property to Buyer shall be conditioned on Buyer giving Seller reasonable assurance at or prior to the Closing[8] (by separate agreement, reservation in the deed of conveyance, covenant running with the land, or otherwise, as may be determined by the parties and their legal counsel) of the following easements or rights for the benefit of Seller's remaining property, to wit: [a list of several easements and rights of access].

Ayer points to an addendum to the settlement statement in which Norfolk acknowledged that it had not yet completed the easements referenced by the contract, and stated that any obligations not yet fully performed at closing would survive the closing, explicitly referencing the easement obligations. However, this merely raised a factual issue as to whether Norfolk has provided "reasonable assurance" of Ayer's access over the purchased land. There is evidence that Norfolk never disputed Ayer's right to access and that Norfolk waited for Ayer to specify to their attorney how his access should be defined.

Finally, Ayer relies on Norfolk's alleged failure to pay earnest money; however, there was evidence that Norfolk tendered the full contract amount and that the earnest money payment was accounted for in the settlement statement. There was also evidence that at least as late as July 26 (well after the original June 1 closing date), Ayer communicated his intent to close the transaction. The trial court appropriately did not purport to reach the merits of Norfolk's claim, nor do we here. In light of the factual issues presented by the record, we discern no abuse of discretion as to the trial court's grant of the interlocutory injunction. See, e.g., *Miller v. Coleman*[9] ("it is well established that even if time is of the essence of a contract, the seller may waive timely performance orally or by conduct"); *Atlanta Six Flags Partnership v. Hughes*[10] (failure to pay earnest money did not result in a failure of consideration). In so ruling, we emphasize that the trial court did not purport to reach the merits of Norfolk's claim, nor do we here. In light of the evidentiary conflicts presented by the record, and in light of the nature of the transaction at issue, we discern no manifest abuse of discretion by

---

[8] The contract defined the term "Closing" as "the closing of the purchase and sale of the Property." Notably, the contract does not require Norfolk's assurance at or prior to the "Closing Date," which is a separate term defined as "on or before June 1, 2007."

[9] *Miller v. Coleman*, 284 Ga. App. 300, 302 (1) (643 SE2d 797) (2007).

[10] *Atlanta Six Flags Partnership v. Hughes*, 191 Ga. App. 404, 407 (1) (381 SE2d 605) (1989).

the trial court in preserving the status quo pending resolution of Norfolk's claims.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED MAY 5, 2008.

*Buchanan & Land, William A. Buchanan*, for appellant.
*Sell & Melton, Brian P. Adams, Kevin T. Brown*, for appellee.